UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

TERI LEIGH MARCHANT

     Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,
a Foreign Profit Corporation,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff TERI LEIGH MARCHANT hereby sues the Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, a Foreign Profit Corporation, and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorneys' fees.

2.    **THE PLAINTIFF.**  The Plaintiff TERI LEIGH MARCHANT (hereinafter "Plaintiff") is *sui juris* and is a resident and citizen for purposes of diversity of jurisdiction of the state of California.

3.    **THE DEFENDANT.** The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as Carnival or Defendant) is incorporated in the country of Panama and does business in the State of Florida, and at all times material hereto was and is headquartered in Miami-Dade County, Florida. For purposes of diversity of citizenship,

1

Carnival is a citizen of the country of Panama.  At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.    **FEDERAL SUBJECT MATTER JURISDICTION.**    Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.    **VENUE AND PERSONAL JURISDICTION.**    The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

    a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b) Had an office or agency in this state and/or county; and/or

    c) Engaged in substantial activity within this state; and/or

    d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

### OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.    **DATE OF THE INCIDENT.**  The incident occurred on November 4, 2024.

8.     **LOCATION OF THE INCIDENT**.   The incident occurred onboard the cruise ship *Carnival Firenze* while the ship was in navigable waters.  Specifically, the incident occurred because the cruise line allowed water accumulation to exist on a slippery-when-wet synthetic floor on an open-air area on Deck 5, onboard the *Carnival Firenze*.

9.     **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT**.  At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **DESCRIPTION OF THE INCIDENT**.   Carnival chose to install a slippery-when-wet synthetic flooring on an open-air area on Deck 5.  The subject flooring is located near one of the two designated smoking areas in the subject vessel. It had been raining earlier on November 4, 2024. It had been raining earlier. It had stopped for a period of time before this slip and fall occurred. This flooring was unreasonably and unpredictably slippery when wet. Carnival's failed to have sufficient number of cleaning and deck personnel for that deck and failed to have or implement proper cleaning procedures, failed to close access to that outdoor deck during and after rainfall, and failed to clean and dry the area, and failed to post warnings about not only the wetness of the area but also the unreasonably and unpredictably nature of the flooring when it is wet. Carnival failed to have a specific procedure on the frequency of inspection and cleaning. Carnival failed to have a log recording when the cleaners or personnel inspected and cleaned the area. Carnival failed to have additional protocols or safety measures in response to weather events and foreseeable hazards.

11.     On November 4, 2024, Plaintiff was walking on the exterior walkway near the designated outdoor smoking area on Deck 5 of the *Carnival Firenze* when suddenly and without warning, she slipped and fell.  As a result of the fall, Plaintiff sustained serious and permanent

injuries, which includes but it is not limited to fracture of her left radius (lower arm bone) at the wrist. The fracture was so severe it required open surgery with insertion of hardware to the arm.

12. **DUTIES OWED BY CARNIVAL.** Under the General Maritime Law, the Defendant Carnival owes to its passengers a duty to act reasonably under the circumstances. The circumstances are that Carnival owns and operates 29 cruise ships which include the *Carnival Firenze*. The *Carnival Firenze* is a part of the Venice Class which includes the *Carnival Venezia* and *Carnival Firenze*. The Carnival Venice Class as well as other ships in Carnival's fleet were designed and custom built on the specifications or at the direction of Carnival's shoreside New Build Department and other shoreside departments. Carnival employs architects, designers, and engineers. The ship was built in Italy at a shipyard under the constant supervision of Carnival's onsite construction managers, designers, architects, and engineers.

13. During construction of the ship, pursuant to the contract with the shipyard, Carnival has full access to the ship to inspect and to reject any aspect of the design or construction of the ship. Carnival maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances. Carnival has ultimate control because it participates in the design and because they are onsite during construction. Carnival also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for changes are not carried out Carnival can withhold payment. All of Carnival ships including the Venice Class from bow to stern and across all decks have the express approval from Carnival before entering navigable waters.

14. The *Carnival Firenze* was delivered to Carnival as finished on December 22, 2020. Carnival has operated and maintained the ship continuously since that time. The *Carnival Firenze* has a capacity for 5,078 passengers and 1,278 crew members.

15.     Like all Carnival ships, the *Carnival Firenze* operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds.  There are designated smoking areas on all of Carnival ships including the *Carnival Firenze*.  One of the two designated smoking areas onboard the *Carnival Firenze* is on Deck 5.  The exterior portion of Deck 5 near the designated smoking area is located and is exposed to the elements like rain, wind and sea water. The floor of the exterior deck of Deck 5 is the same Bolidt Future Teak flooring that appears on the open deck of the Lido Deck.  Upon information and belief, the Bolidt Future Teak flooring is a synthetic resin-based flooring system designed to replicate the appearance of natural teak wood. Carnival knows that its exterior Deck 5 floor materials become slippery and hazardous when wet.

16.     As anticipated and intended by Carnival, passengers constantly and repetitively use one of the two smoking areas onboard the *Carnival Firenze* throughout the day. For this reason, Carnival knew or should have known the design and selection of materials for outdoor areas needed to be appropriate, slip resistant and safe for installation in locations subject to heavy passenger traffic and continuous exposure to the outdoor elements and wetness.

17.     Carnival knows that water on the exterior deck floors blends in with the floors. Carnival knows that passengers may not be able to observe that the deck is wet or know the extent to which the decking surface becomes dangerously slippery when wet.  As a result of the known risk of slippery conditions caused by rain, pooling water, or even dampness on the outdoor deck surfaces, Carnival requires its crew members to place caution signs to warn passengers of such hazardous conditions.   Therefore, Carnival knew or should have known that its passengers may not know that Carnival's outside deck floors can be dangerous.

18.     Despite the fact that Carnival was aware of these circumstances based on its years of maritime experience and knowledge of prior incidents demonstrating that its synthetic outdoor flooring slipperiness increases significantly when wet, especially after rainfall or washing such as it

was the case in this incident.  In this instance, Carnival continued to allow passengers access to the outdoor smoking area on Deck 5 even when the deck floors were wet, or water was pooling. Carnival knew of the hidden dangers of the unreasonable slipperiness of the wet floor, yet Carnival or its employees did little or nothing to address these dangers.

19.     **NOTICE: PRIOR SIMILAR INCIDENTS.**   Prior similar incidents show evidence that Carnival had notice of the dangerous condition here. Carnival documents slip and fall in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to passenger services throughout their fleet; safety testing and/or inspections testing.  Examples of similar prior incidents known to date include the following incidents involving passengers who slipped and fell on wet slippery walkways on Carnival's ships under the same and/or similar circumstances as Plaintiff:

a. Passenger William Hornsberger was injured on December 12, 2021, when he slipped and fell on the wet and slippery open deck floors on Deck 16 while on board the Carnival *Mardi Gras.  William Hornsberger v. Carnival Corporation*, Case No. 1:22-cv-20204. The Lido Deck flooring on the Carnival *Mardi Gras* is the same or substantially similar to the Lido Deck flooring on the Carnival *Firenze.*

b. Passenger Shelly Gersten was injured on January 15, 2022, when she slipped and fell on the wet slippery synthetic resin flooring on Deck 16 while on board the Carnival *Mardi Gras*. *Shelly Gersten v. Carnival Corporation*, Case No. 1:22-cv-23751.

c. Passenger Ana Martinez slipped and fell and sustained injuries on August 5, 2021, when she slipped on the wet, slippery open deck steps near the Patio Pool area of the Carnival *Mardi Gras*. *Ana Martinez v. Corporation*, Case No. 1:22-cv-21626.

d.  Passenger Diana Rose Mayne was injured on January 24, 2022, when she slipped and fell on the wet and slippery flooring on Deck 18 while on board the Carnival *Mardi Gras*. *Diana Rose Mayne v. Corporation*, Case No. 1:22-cv-22617.

e.  Passenger Tammy Lopez was injured on October 6, 2019, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the Carnival *Dream*. *Tammy Lopez v. Carnival Corporation*, Case No. 1:22-cv-20669. The Lido Deck flooring on the Carnival *Dream* is the same or substantially similar to the Lido Deck flooring on the Carnival *Firenze*.

f.  Passenger Gini Hoffman was injured on December 24, 2018, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the Carnival *Magic*. *Gini Hoffman v. Carnival Corporation*, Case No. 1:19-cv-25277. The Lido Deck flooring on the Carnival *Magic* is the same or substantially similar to the Lido Deck flooring on the Carnival *Firenze*.

g.  Passenger Sarah Williams was injured on June 4, 2017, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the Carnival *Liberty*. *Sarah Williams v. Carnival Corporation.*, 440 F. Supp. 3d 1316 (S.D. Fla. 2020). The Lido Deck flooring on the Carnival *Liberty* is the same or substantially similar to the Lido Deck flooring on the Carnival *Firenze*.

20.     **NOTICE: THE SIZE OF THE WET AREA.**  Additional evidence that Carnival had noticed of the dangerous condition here is shown by the size of the wet area.  The open-air outdoor deck, Deck 5, was wet.

21.     **NOTICE: LENGTH OF TIME THE DANGEROUS CONDITION EXISTED.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the

length of time that the condition existed. For the wet area to cover such a large area of the deck, the condition existed for an extended period of time.

22.     **NOTICE: TRAINING AND PROCEDURES AND TRAININGS.**  Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that the cruise line has policies and procedures applicable to the subject area that crew members inspect and maintain the floors in a clean and dry condition as well as to warn passengers of slippery wet floors. These training programs include but are not limited to Carnival's "Own Your Own Spill" program, two-minute trainers, Carnival's College Program as well as its HESS MS Procedures which address slip and fall prevention, floor maintenance and provision of warnings regarding shipboard hazards. Carnival's training programs specifically train its crew members to inspect and maintain its floors in a clean and dry condition including but not limited to after mopping Carnival's floors.  Carnival's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured.  Carnival also trains and created procedures which require crew members to place wet floor signs on walkways that become repetitively wet and/or are known to be wet and even when the floors are damp.  Additionally, Carnival trains its crew that wet floor signs must remain in the area of wet or damp floors until the floors are dried.  This includes after crew have recently mopped the floors.  Carnival created these procedures for its crew because Carnival knows that without warnings passengers may not know or be able to perceive that its floors are wet. Carnival also knows that without warnings passengers may not know how slippery its floors are when wet or damp.  This shows that Carnival knew or should have known that the increased slipperiness of its outdoor deck flooring when wet is not an open and obvious condition to passengers.  Further, Carnival was aware of the hazard yet continued to allow passengers access to the outdoor deck near the smoking area on Deck 5, even when the unreasonable slippery floors were wet or water was visibly pooling.

23. **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Carnival's decks are escape routes that Carnival must maintain in a safe, clear, clean and dry condition. Upon information and belief, Carnival, at all relevant times, was aware of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and floor materials. See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

24. **NOTICE: CAUTION SIGNS.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that Carnival routinely posts caution signs. Carnival uses these caution signs in walkways and other areas of its ships to alert passengers of wet slippery floors. This is done in part because Carnival knows through years of experience including through the investigation of countless shipboard slips and falls, that if signs are not used passengers can and do slip and fall. Additionally, Carnival knows through years of experience including through the investigation of countless shipboard slip and falls that the degree of slipperiness of its shipboard floors as well as the presence of water or liquids is not immediately apparent to passengers.

25.   **NOTICE: FUN TIMES DAILY**. Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that CARNIVAL's Fun Times daily newspaper states, "use caution on outdoor decks as they can be slippery."

**COUNT I**
**NEGLIGENT FAILURE TO MAINTAIN**
**(Direct Liability for Negligence Under General Maritime Law)**

26.   The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25 above.

27.   This is an action against Carnival for failure to maintain its outdoor deck, Deck 5, floors in a reasonably safe condition onboard the *Carnival Firenze* on November 4, 2024.

28.   **DUTIES OWED BY CARNIVAL.**  Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff.  Carnival's duties of care regarding maintaining the subject area include: (a) inspecting on a frequent and timely basis for wetness or a water accumulation on the slick floor believed to be composed of a synthetic material known to become slippery-when-wet; (b) cleaning and drying wetness or a water accumulation on the slick, slippery-when-wet flooring; (c) cordoning or blocking off any area on the slick, slippery-when-wet floor with wetness or a water accumulation; (d) hiring sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the flooring on Deck 5, area onboard the *Carnival Firenze* in a safe manner, including the subject area where Plaintiff slipped and fell on November 4, 2024.

29.   **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

30.   **CARNIVAL BREACHED ITS DUTY.**  Carnival breached its duty to maintain the slippery walkway floors near the designated smoking area on Deck 5 onboard the *Carnival Firenze* on November 4, 2024, where Plaintiff slipped and fell.  Carnival breached its duties by

10

failing to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick floor believed to be composed of a synthetic material known to become slippery-when-wet; (b) clean and dry wetness or a water accumulation on the slick, slippery-when-wet flooring; (c) cordon or block off any area on the slick, slippery-when-wet floor with wetness or a water accumulation; (d) hire sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the slippery-when-wet synthetic flooring on Deck 5, area onboard the *Carnival Firenze* where Plaintiff slipped and fell on November 4, 2024.

31.   **PROXIMATE CAUSE.**  Carnival's failure to inspect and maintain the slippery-when-wet synthetic flooring in the subject area onboard the *Carnival Firenze* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed for a large wet area near the designated outdoor smoking flooring on Deck 5 to be slick and slippery for an extended period of time. Had Carnival properly maintained and inspected the subject area onboard the *Carnival Firenze*, Plaintiff would have never slipped, fallen and been injured on *Carnival Firenze* on November 4, 2024.

32.   **DAMAGES.**  As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN
### (Vicarious Liability for Negligence of Employees
### *Respondeat Superior* Under The General Maritime Law)

33.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25 above.

34.     This is an action against Carnival for its vicarious liability arising from the active negligence of its stewards (aka cleaners) who were assigned, scheduled, instructed, and/or directed to inspect and/or maintain the slippery-when-wet synthetic flooring on Deck 5, onboard *Carnival Firenze* on November 4, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Housekeeping Manager and Housekeeping Manager.

35.     **DUTIES OWED BY THESE CLEANING PERSONNEL.**  Carnival personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of Carnival's passengers arising from the employer-employee relationship between Carnival and its personnel.  The cleaners or stewards who were assigned to this ship and to this Deck 5 area on the

day of this fall had a duty to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick, synthetic floor; (b) clean and dry wetness or a water accumulation on the slick, synthetic floor; (c) cordon or block off any area on the slick, synthetic floor with wetness or a water accumulation, and other means.

36.    Carnival's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet synthetic flooring in the subject area. Carnival's employees assigned to the subject area are part of a larger class of crewmembers on the housekeeping department which are commonly referred to as stewards or cleaners. Carnival's Assistant Housekeeping Manager and Housekeeping Manager scheduled, designated, assigned, instructed and/or directed stewards or cleaners to inspect and maintain the slippery-when-wet synthetic flooring on Deck 5, which included but was not limited to the area near the designated outdoor smoking section on Deck 5, onboard *Carnival Firenze* on November 4, 2024.

37.     The stewards assigned to the subject area where Plaintiff slipped and fell were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation, clean and dry areas of wetness or water accumulation, block of areas on the slick, synthetic floor with wetness or a water accumulation or other means to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 22.

38.    **THESE CLEANING PERSONNEL BREACHED THEIR DUTIES.**  Carnival's stewards breached their duties to maintain the slippery-when-wet synthetic flooring in this area of the *Carnival Firenze* on November 4, 2024.  Specifically, the stewards who were assigned to that area of the slippery-when-wet synthetic flooring on that day failed to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation; (b) clean and dry wetness or a water accumulation; (c) cordon or block off the area with the wetness on that flooring; and other means

of inspecting and maintaining the dangerous condition of the slippery-when-wet synthetic wood flooring on the open-deck section of Deck 5, where Plaintiff slipped and fell on November 4, 2024. Carnival's stewards or cleaners failed to inspect and/or maintain the area to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 21.

39.     These cleaning personnel, that is the stewards assigned to this area and on that day and the Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant Carnival. Accordingly, the Defendant Carnival is liable and responsible vicariously for the negligence of these cleaning personnel.

40.     **PROXIMATE CAUSE.**   The failure of these Carnival cleaning personnel to inspect and/or maintain the flooring in the subject area onboard the *Carnival Firenze* in a safe manner, proximately caused Plaintiff's injuries.   These failures of inspection and maintenance allowed for water to accumulate and remain on the slippery-when-wet synthetic wood flooring in Deck 5.  Had Carnival's cleaning personnel properly maintained and inspected the slippery-when-wet synthetic flooring, Plaintiff would have never slipped, fallen and been injured on *Carnival Firenze* on November 4, 2024.

41.     **DAMAGES**.  As a direct result of the active negligence of Defendant's cleaning personnel described above, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering,

disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO WARN**
**(Direct Liability for Negligence Under General Maritime Law)**

42.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25 above.

43.     This is an action against Carnival for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers onboard the *Carnival Firenze*.

44.     **DUTIES OWED BY CARNIVAL.**  Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passengers. Carnival's duties of care include warning passengers who come into the area of the slippery-when-wet synthetic wood flooring and of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *Carnival Firenze,* including the dangerous condition of the

15

slippery-when-wet synthetic wood flooring on Deck 5, where Plaintiff slipped and fell on November 4, 2024.

45.     **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

46.     **CARNIVAL BREACHED ITS DUTY.** Carnival breached its duty to warn Plaintiff of the dangerous conditions on board the *Carnival Firenze*, including where Plaintiff slipped and fell on November 4, 2024.  Carnival breached its duties to the Plaintiff by its actions and conduct.  Carnival failed to warn passengers who come into the area of the slippery-when-wet synthetic wood flooring and of the presence of a water accumulation by failing to:  (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn passengers of dangerous conditions onboard the *Carnival Firenze,* including the dangerous condition created by the slippery-when-wet synthetic flooring on Deck 5, where Plaintiff slipped and fell on November 4, 2024.

47.     **PROXIMATE CAUSE.** Carnival's failure to reasonably warn Plaintiff of the dangerous conditions on board the *Carnival Firenze*, including the slippery-when-wet flooring on Deck 5, where Plaintiff slipped and fell on November 4, 2024, proximately caused the Plaintiff's injuries.  Had Carnival reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have walked onto the dangerous, slippery-when-wet flooring.  Plaintiff therefore would never have slipped, fallen and been injured onboard the *Carnival Firenze* on November 4, 2024.

48.     **DAMAGES.**  As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and

in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT IV
### NEGLIGENT FAILURE TO WARN
**(Vicarious Liability for Negligence**
***Respondeat Superior* Under General Maritime Law)**

49.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 25 above.

50.     This is an action against Carnival for its vicarious liability for the active negligence of its stewards (aka cleaners) who were assigned, scheduled, instructed, and/or directed to warn passengers including the Plaintiff of dangerous conditions of the slippery-when-wet synthetic flooring on Deck 5, onboard *Carnival Firenze* on November 4, 2024, and the negligence of the supervisors of those particular stewards assigned on that day and at that location, that is the Assistant Housekeeping Manager and Housekeeping Manager.

17

51.      **<u>DUTIES OWED BY THESE CLEANING PERSONNEL</u>.**  Carnival's personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of Carnival's passengers arising from the employer-employee relationship between Carnival and its cleaning personnel.  The cleaners or stewards who were assigned to this ship and to this Deck 5 on the day of this fall had a duties to warn passengers who come into the area of the slippery-when-wet synthetic wood  flooring and of the presence of a water accumulation included but is not limited to:  (a) posting warning signs, (b) placing physical barriers, (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *Carnival Firenze,* including the dangerous conditions of the slippery-when-wet synthetic wood flooring on Deck 5, where Plaintiff slipped and fell on November 4, 2024.

52.      Carnival's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring. Further, at all times material hereto, said crewmembers were employees of the Defendant and were part of the larger class of crewmembers on the housekeeping department and which are often referred to as stewards or cleaners. A Carnival's assistant housekeeping manager or supervisor scheduled, designated, assigned, instructed and/or directed the stewards or cleaners to warn passengers of dangerous conditions on Deck 5, which included but was not limited to the area near the designated outdoor smoking section on Deck 5, onboard *Carnival Firenze* on November 4, 2024.

53.      The stewards assigned to the subject area where Plaintiff slipped and fell were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions  to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 22.

54.     **THESE CLEANING PERSONNEL BREACHED THEIR DUTIES.** Carnival's stewards or cleaners breached their duties to warn Plaintiff of the dangerous conditions on Deck 5, onboard *Carnival Firenze* on November 4, 2024, where Plaintiff slipped and fell.

55.     On the day of the incident Carnival's stewards or cleaners scheduled, assigned, instructed and/or directed to the subject area failed to warn the Plaintiff of dangerous conditions of the slippery-when-wet synthetic wood flooring in the area where Plaintiff fell.  Carnival's stewards or cleaners failed to warn passengers who came into the area of the slippery-when-wet synthetic flooring and of the presence of a water accumulation by failing to: (a) post warning signs; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means of warning of dangerous conditions of the slippery-when-wet synthetic wood flooring on the Deck 5, where Plaintiff slipped and fell on November 4, 2024.

56.     These cleaning personnel, that is the stewards assigned to this area and on that day and the Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant Carnival. Accordingly, the Defendant Carnival is liable and responsible vicariously for the negligence of these cleaning personnel.

57.     **PROXIMATE CAUSE.**   Carnival's steward or cleaner's failure to reasonably warn Plaintiff of the dangerous conditions on board the *Carnival Firenze*, including the area on Deck 5, where Plaintiff slipped and fell on November 4, 2024, proximately caused the Plaintiff's injuries. Had Carnival's stewards or cleaners reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have walked onto the dangerous, slippery-when-wet flooring. Plaintiff therefore would never have slipped, fallen and been injured onboard the *Carnival Firenze* on November 4, 2024.

58.   **<u>DAMAGES</u>.**   As a result of Carnival's crew's negligent failure to warn, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**<u>COUNT V</u>**
**<u>NEGLIGENT TRAINING OF PERSONNEL</u>**
**(Direct Liability for Negligence Under General Maritime Law)**

59.   The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 25 above.

60.   This is an action against Carnival for its negligent training of shipboard crew members.

20

61.   **DUTIES OWED BY CARNIVAL.**   Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passenger. Carnival's duties of care includes but is not limited to: (a) teaching shipboard crew how to inspect for puddles or water accumulation; (b) teaching shipboard crew how frequently to inspect for water puddles or water accumulation; (c) teaching crew how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teaching shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teaching shipboard crew how to warn guests about wet slippery floors; (f) teaching shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teaching shipboard crew how to reasonably clean and dry floors in a safe condition; (h) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teaching shipboard crew how to test, check and/or otherwise determine whether crew understand Carnival's slip and fall prevention program; (k) teaching shipboard crew how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (l) teaching shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teaching shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implementing training programs or materials which provide ongoing training of personnel to sufficiently instill in its employees proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  Carnival's duties, as detailed above, extend to

the slippery-when-wet synthetic wood flooring onboard the *Carnival Firenze*, including the specific area where Plaintiff slipped and fell on November 4, 2024.

62.     **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

63.     **CARNIVAL BREACHED ITS DUTIES.** Carnival breached its duties of care owed to Plaintiff and was negligent by failing to reasonably train its crew members to inspect, maintain, clean, dry and warn passengers of the dangerous conditions onboard the *Carnival Firenze* including the subject area where Plaintiff slipped and fell on November 4, 2024. Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to reasonably implement or operate its training programs by failing to: (a) teach shipboard crew how to inspect for puddles or water accumulations; (b) teach shipboard crew how frequently to inspect for puddles or water accumulations; (c) teach crew how to properly record inspections which ensure frequency of inspection is followed and/or maintained; (d) teach shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate; (e) teach shipboard crew how to warn guests about wet slippery floors; (f) teach shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery; (g) teach shipboard crew how to reasonably clean and dry floors in a safe condition; (h) teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition; (i) teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors; (j) teach shipboard crew how to test, check and/or otherwise determine whether crew understand Carnival's slip and fall prevention program; (k) teach shipboard crew how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness

of wet floors; (l) teach shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors; (m) teach shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs; (n) implement training programs or materials which provide ongoing training of personnel to sufficiently instill on its employees  proper inspecting, cleaning, warning, and blocking off areas where there is wetness or a water accumulation.  In doing so, Carnival failed to reasonably implement or operate its training programs described in paragraph 22 and incorporated herein.

64.     At the time Plaintiff fell on the slippery-when-wet synthetic wood flooring on Deck 5, the crew that were responsible for warning, cleaning, drying and inspecting, and/or maintaining that area failed to do so.  Because those crewmembers were not properly trained, Carnival failed to reasonably warn passengers like Plaintiff of the dangerous conditions on board the *Carnival Firenze* including the area where Plaintiff slipped and fell on November 4, 2024.  Because those crewmembers were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

65.     **PROXIMATE CAUSE.** Carnival's failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries.  Had Carnival reasonably implemented or operated its training programs onboard its ships including the *Carnival Firenze* on November 4, 2024, the crew members would have inspected, cleaned, dried, and warned Plaintiff about the dangerous condition.  If Carnival had reasonably implemented or operated its training programs, the dangerous condition would not have existed.  If Carnival reasonably trained its crew members, Plaintiff would have been aware of the dangerous conditions.  Plaintiff therefore would never have slipped and fell on the subject incident area on November 4, 2024.

66.   **DAMAGES.**   As a direct result of Defendant's negligence, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT DESIGN, CONSTRUCTION**
**AND SELECTION OF MATERIALS**
**(Direct Liability for Negligence Under General Maritime Law)**

67.   The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 25 above.

68.   This is an action against Carnival for its negligent design, construction and selection of the slippery-when-wet flooring believed to be made of synthetic wood installed the subject area.

69.     **DUTIES OWED BY CARNIVAL**.  Carnival owes duties to exercise reasonable care under the circumstances for its passengers. Carnival's duties of care include: (a) selecting materials which include selecting a floor surface which is suitable and safe for a high volume of foot traffic, continuous exposure to the outdoor elements and wetness and where the inspection and cleaning is at a low interval and amount as is the case on Carnival ships; (b) designing and constructing all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approving the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use.

70.     The circumstances are that Carnival owns and operates 29 cruise ships which include the *Carnival Firenze*.  The *Carnival Firenze* is a part of the Venice Class which includes the *Carnival Venezia* and *Carnival Firenze*. The Venice Class as well as other ships in Carnival's fleet were designed and custom built on the specifications or at the direction of Carnival's shoreside New Build Department and other shoreside departments. The *Carnival Firenze* was built in Italy at a shipyard under the constant supervision of Carnival's onsite construction managers, designers, architects, and engineers. Carnival employs architects, designers, and engineers.

71.     During construction of the ship, pursuant to the contract with the shipyard, Carnival has not only full access to the ship to inspect and the ability to inspect the designs used for construction but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter.  Carnival maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances.  Carnival has ultimate control because it participates in the design and because they are onsite during construction. Carnival also has ultimate control over design and construction because if their request for a certain design or

construction is not carried out correctly or if their request for changes are not carried out Carnival can withhold payment. All of Carnival ships including all Venice Class ships from bow to stern and across all decks have the express approval from Carnival before entering navigable waters.

72.     The *Carnival Firenze* was delivered to Carnival as finished on December 22, 2020. Carnival has operated and maintained the ship continuously since that time. The *Carnival Firenze* has a capacity for 5,078 passengers and 1,278 crew members.

73.     Like all Carnival ships, the *Carnival Firenze* operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. There are designated smoking areas on all of Carnival ships including the *Carnival Firenze*.  One of the two designated smoking areas on board the *Carnival Firenze* is on Deck 5. The exterior portion of Deck 5 which is where the designated smoking area is located is exposed to the elements like rain and wind and sea water. The floor of the exterior deck of Deck 5 is the same Bolidt Future Teak flooring that appears on the open deck of the Lido Deck. Upon information and belief, the Bolidt Future Teak flooring is a synthetic resin-based flooring system designed to replicate the appearance of natural teak wood. Carnival knows that its exterior Deck 5 floor materials become slippery and hazardous when wet.

74.     As anticipated and intended by Carnival passengers constantly and repetitively use one of the two smoking areas onboard *Carnival Firenze* throughout the day.  For this reason, Carnival knew or should have known the design and selection of materials for outdoor areas needed to be appropriate, slip resistant and safe for installation in locations subject to heavy passenger traffic and continuous exposure to the outdoor elements and wetness.

75.     Carnival knows that water on the exterior deck floors blends in with the floors. Carnival knows that passengers may not be able to observe that the deck is wet or know the extent of the slipperiness of the wet deck.  As a result of the known risk of slippery conditions caused by rain,

pooling water, or even dampness on the outdoor deck surfaces, Carnival requires its crew members to place caution signs to warn passengers of such hazardous conditions.  Therefore, Carnival knew or should have known that its passengers may not know that Carnival's outside deck floors can be dangerous.

76.     Despite the fact that Carnival was aware of these circumstances based on its years of maritime experience and knowledge of prior incidents demonstrating that its synthetic outdoor flooring slipperiness increases significantly when wet, especially after rainfall or washing such as it was the case in this incident. In this instance, Carnival continued to allow passengers access to the outdoor smoking area on Deck 5 even when floors were wet, or water was pooling. Carnival knew of the hidden dangers of the slipperiness of the wet floor, yet Carnival or its employees did little or nothing to address these dangers.

77.     **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

78.     Carnival knew or should have known that the subject area including the outdoor flooring it chose and installed in Deck 5, onboard the *Carnival Firenze* was unreasonably dangerous and slippery when wet.

79.     Carnival knew or should have known of the dangerousness of the subject area including the subject floor since its installation.

80.     **CARNIVAL BREACHED ITS DUTIES.**  Carnival breached its duties of care owed to Plaintiff and was negligent by selecting, designing and/or constructing, approving, the materials installed on onboard the *Carnival Firenze* including the subject area where Plaintiff slipped and fell on November 4, 2024.  Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to reasonably design and/or construct, select, approve the materials onboard the *Carnival Firenze* by failing to: (a) select materials which include selecting a floor

surface which is suitable and safe for a high volume of foot traffic, continuous exposure to the outdoor elements and wetness and where the inspection and cleaning is at a low interval and amount as is the case on Carnival ships; (b) design and construct all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approve the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use.  Carnival failed to select, design and/or construct and approve materials which complied with industry standards. The design and/or materials Carnival chose, selected, approved of, and installed for the subject area on board the *Carnival Firenze* was unreasonably dangerous.

81.   **PROXIMATE CAUSE.**  Carnival's negligent design, construction, and selection of materials for the subject area on board the *Carnival Firenze* proximately caused Plaintiff's injuries.  Had Carnival properly designed, constructed and selected the material installed on the subject area onboard the *Carnival Firenze,* Plaintiff would have never slipped, fallen and been injured on November 4, 2024.

82.   **DAMAGES.**  As a direct result of Defendant's negligent selection, design and/or construction and approval of materials, the Plaintiff has suffered damages in the past and will continue to suffer damages in the future. These damages are permanent. Economic damages include but are not limited to medical treatment, psychological treatment, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and loss of income and earning capacity in the future. The non-economic damages suffered by the Plaintiff in the past and in the future include but are not limited to pain, suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:     */s/ Elizabeth D. Carlin, Esq.*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**ELIZABETH D CARLIN, ESQ**. (FBN 753521)
ecarlin@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
12150 SW 128th Court, Ste. 225
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Counsel for the Plaintiff*